IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
2:20-cv-01358-BHH

| | |
|---|---|
| **GRAINGER RICKENBAKER and ELIZABETH MEKLER, each individually and on behalf of all others similarly situated,**<br><br>   **Plaintiffs**<br><br>v.<br><br>**DREXEL UNIVERSITY,**<br><br>   **Defendant.** | **FIRST AMENDED CLASS ACTION COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiffs Grainger Rickenbaker and Elizabeth Mekler ("Plaintiffs") by and through undersigned counsel, bring this action against Drexel University ("Defendant" or the "University") on behalf of themselves and all others similarly situated, and make the following allegations based upon information, attorney investigation and belief, and upon Plaintiffs' own knowledge:

## PRELIMINARY STATEMENT

1. Plaintiffs bring this case as a result of Defendant's deceptive announcements regarding the University's decision to cancel in-person classes and transition all classes to an online/remote format for the spring 2020 quarter, and Defendant's failure to provide the services promised through that transition.

2. This action seeks refunds of the amount Plaintiffs and other members of the Class paid for the Spring 2020 quarter, together with treble damages and attorney fees and costs.

## PARTIES

3. Defendant Drexel University is an institution of higher learning located in Philadelphia,

1

Pennsylvania.

4. Upon information and belief, Defendant has an estimated endowment of approximately $813.7 Million[1] and had roughly 19,500 students enrolled for on-campus classes during the 2019-2020 academic year.[2]

5. Moreover, Defendant received more than $6.5 million of federal stimulus under the CARES Act.[3] The CARES Act directs that institutions must use at least half of the funds they receive to provide emergency financial aid grants to students for expenses related to the disruption of campus operations due to COVID-19.

6. According to Defendant's website, as accessed on June 15, 2020, the University received the federal funds on May 12, 2020. However, as of June 8, 2020, the University had distributed $0 to its students, despite the fact that an estimated 12,996 of its students qualify for such relief:[4]

**FEDERAL EMERGENCY AID GRANT REPORTING**

Each institution receiving CARES Act funds is directed to comply with Section 18004(e) of the CARES Act and submit an initial report (the "30-day Fund Report") to the Secretary thirty (30) days from the date of the institution's Certification and Agreement to the Department. The '30-Day Fund Report' information follows:

1. Drexel University signed and returned to the Department the Certification and Agreement on May 4, 2020. The University intends to use no less than 50 percent of the funds received under Section 18004(a)(1) of the CARES Act to provide Emergency Financial Aid Grants to students.
2. The University received $6,589,634 on May 12, 2020, from the Department pursuant to the institution's Certification and Agreement for Emergency Financial Aid Grants to Students.
3. The total amount of Emergency Financial Aid Grants distributed to students under Section 18004(a)(1) of the CARES Act as of June 8, 2020 is $0.
4. 12,996 students enrolled in the Spring 2020 semester or quarter were eligible to participate in programs under Section 484 in Title IV of the Higher Education Act of 1965 and thus eligible to receive Emergency Financial Aid Grants to students under Section 18004(a)(1) of the CARES Act.

---

[1] As of June 30, 2019. "U.S. and Canadian 2019 NTSE Participating Institutions Listed by Fiscal Year 2019 Endowment Market Value, and Percentage Change in Market Value from FY18 to FY19 (Revised)". National Association of College and University Business Officers and TIAA. Retrieved June 15, 2020
[2] https://drexel.edu/about/glance/fast-facts/
[3] https://drexel.edu/drexelcentral/finaid/eligibility/cares-act/
[4] https://drexel.edu/drexelcentral/finaid/eligibility/cares-act/

7. Plaintiff Rickenbaker is an individual and a resident and citizen of the state of South Carolina.

8. Plaintiff Mekler is an individual and resident and citizen of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to the Class Action fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

10. This Court has personal jurisdiction over Defendant because Defendant conducts business in South Carolina and has sufficient minimum contacts with South Carolina.

11. The Defendant has solicited students residing in South Carolina to attend their institution; has accepted money, including application and other fees, from students residing in South Carolina; has participated in college sports competitions and/or academic competitions in South Carolina; has websites accessible to students in South Carolina; has entered into contracts with South Carolina residents; and generally has minimum contacts in South Carolina sufficient to satisfy the Due Process Clauses of the South Carolina and United States Constitutions.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

13. Plaintiffs were each enrolled as full-time students for the spring 2020 academic quarter at Defendant's institution.

3

14. Unlike many other institutions of higher learning that operate on a semestral calendar, Defendant's University operates on a quarterly calendar.

15. Defendant's 2019-2020 academic year began with the fall term on or about September 23, 2019.

16. Throughout the fall term, Plaintiffs and members of the proposed Class attended the University and received on-campus, in-person instruction.

17. Defendant's fall term ended on or about December 14, 2019.

18. Students returned to campus for the winter term, which began on or about January 6, 2020.

19. Again, Plaintiffs and members of the proposed Class attended winter term classes in person and on campus.

20. The winter term was scheduled to end on or about March, 21, 2020, with classes resuming for the spring term on or about March 30, 2020.

21. However, as a result of the coronavirus pandemic, the University made a series of decisions, and issued a series of announcements, which changed the nature of the spring term and form the basis of this lawsuit.

22. On March 16, 2020, the University emailed all students to inform them that the start of the spring term would be delayed by a week to April 6, 2020, and that the entire term would be taught online through distance learning methods.[5]

23. The timing of this announcement proved problematic for many students.

24. As an initial matter, bills for the spring term had already been sent, and many students had already paid their spring term tuition, including Plaintiff Mekler, who paid spring 2020 tuition on March 11, 2020.

---

[5] https://drexel.edu/now/archive/2020/March/Entire%20Spring-Term-to-be-Taught-Remotely/

25. Moreover, students had already registered for spring term classes.

26. Facing a potential mass exodus, and corresponding drop in revenue, Defendant's President made a video address to the community on March 17, 2020.[6]

27. In this address, relative to the transition to online instruction, President Fry stated,

> We know we can do this and do it well, because Drexel began online education in 1996 and we have become leaders in the field. Drexel University Online already provides high quality, impactful, and engaging remote education…now we're just taking it up a notch. I can assure you that Drexel students will find it just as rewarding and challenging as any course taught in a classroom setting.[7]

28. Defendant sent a follow up email to students on March 19, 2020, promising certain institutional safeguards in an attempt to assure students that they would continue to be "be fully engaged and challenged in their coursework."[8]

29. Among these promises, Defendant assured students that their professors would still be available for "remote" office hours and that such office hours were required to be clearly listed in each course syllabus.[9]

30. Defendant also "highly encouraged" professors to make arrangements for synchronous virtual lectures and assured students that all synchronously delivered material would be conducted during the class' originally scheduled time slot.[10]

31. Defendant sent a subsequent message to students on March 25, 2020.[11]

32. This message began by praising the past success of Defendant's online degree program, Drexel University Online:[12]

---

[6] https://www.youtube.com/watch?v=8wo6rIdPXB4
[7] Id.
[8] https://drexel.edu/now/archive/2020/March/drexel-gears-up-for-remote-learning-research-campus-clears-out/
[9] Id.
[10] Id.
[11] Id.
[12] Id.

> With Drexel's long history in online education — granting academic degrees for online programs as far back as the 1999-2000 academic year — we have an experienced and resourceful community committed to delivering high-quality courses and exams with academic integrity and rigor.

33. Then, in the very next section, Defendant stated:[13]

> **Tuition and Fees**
>
> There will be no charges levied for on-campus housing or meal plans for students working from home or in off-campus residences. However, just as with online courses offered through Drexel University Online, normal tuition and fees will apply for the spring 2020 quarter — less any institutional scholarships and grants, or federal and state aid, which will be credited on student bills. We are working diligently over the extended spring break to develop engaging teaching and learning experiences to enable students to continue their studies. Fees, in turn, support the creation of a rich online learning experience, as well as other forms of digital interaction currently under development.

34. Leading up to the resumption of online classes, Defendant assured students that:

> Drexel faculty and professional staff are eager to welcome you back — as they show in this video. Before the first day is out, professors and their students will have gathered online for more than 750 course sessions previously scheduled in traditional classrooms and labs. By week's end, they will be followed by several thousand online sessions, amounting to approximately 3,250 instructional meetings. And on and on, throughout the nine-week term.[14]

35. Plaintiffs and members of the proposed Class chose not to transfer or withdraw, but instead chose to continue their education at Defendant's University during the spring 2020 quarter.

36. Plaintiffs and members of the proposed Class were required to and did pay valuable consideration in exchange by way of significant tuition and fees.

37. However, Defendant failed to deliver the online product that it had promised, while at the same time, deceptively charging more for the product than the advertised price.

---

[13] Id.
[14] https://drexel.edu/now/archive/2020/April/Welcome-back-to-future/

6

## CLASS ACTION ALLEGATIONS

38. Plaintiffs brings this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

    **The Class:**

    All people who paid on-campus tuition for or on behalf of students enrolled in classes at the University for the spring 2020 quarter.

39. Excluded from the Classes are The Board of Drexel University, and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiffs reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

40. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

### Numerosity: Fed. R. Civ. P. 23(a)(1)

42. The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs is informed and believe that there are thousands of members of the Class, the precise number being unknown to Plaintiffs, but such number being ascertainable from Defendant's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice

dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

43. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   i. Whether Defendant engaged in the conduct alleged herein;

   ii. Whether Defendant breached its contracts with Plaintiffs and the other members of Class by failing to provide the services for which students had contracted;

   iii. Whether Defendant was unjustly enriched by retaining tuition payments of Plaintiffs and the Class by collecting money in exchange for promised services and then failing to deliver those services;

   iv. Whether Defendant committed conversion as detailed above against Plaintiffs and the other members of the Tuition Class;

   v. Whether Defendant passed of goods and services as those of another.

   vi. Whether Defendant caused likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;

   vii. Whether Defendant represented that its remote education would be of a particular standard, quality or grade, when it was another;

   viii. Whether Defendant's emails and other statements or advertisements were false and/or misleading as to the price of tuition for the spring 2020 quarter;

   ix. Whether Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law as to Plaintiffs and the other members of the Class;

   x. Whether certification of any or all of the classes proposed herein is appropriate

      under Fed. R. Civ. P. 23;

xi. Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

xii. The amount and nature of relief to be awarded to Plaintiffs and the other Class members.

### Typicality: Fed. R. Civ. P. 23(a)(3)

44. Plaintiffs' claims are typical of the other Class member's claims because, among other things, all Class members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

### Adequacy: Fed. R. Civ. P. 23(a)(4)

45. Plaintiffs are adequate Class representative because their interests do not conflict with the interests of other members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex litigation; and Plaintiffs intend to prosecute the action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

### Superiority: Fed. R. Civ. P. 23(b)(3)

46. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct.

47. Even if Class members could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

### Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)

48. To the extent that a Class does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiffs seek the certification of issues that will drive the litigation toward resolution.

### Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)

49. The University has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the Class members as a whole.

**FOR A FIRST COLLECTIVE CAUSE OF ACTION**
**UNFAIR TRADE PRACTICES – 73 P.S. §§201-1 – 201-9.2**
**(Plaintiffs and Other Members of the Class)**

50. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

51. Plaintiffs bring this count on behalf of themselves and other members of the Tuition Class.

52. Through the making of the statements alleged in Paragraphs 26-34 above, and their contrary actions, Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "UTPCPL").

53. The UTPCPL makes it unlawful to make false or misleading statements of fact

concerning the reasons for, existence of, or amounts of price reductions.

54. Defendant violated this provision when it persisted in charging the full on-campus price for tuition and fees for the spring quarter, after announcing on March 25, 2020, that "just as with online courses offered through Drexel University Online, normal tuition and fees will apply for the spring 2020 quarter."[15]

55. This announcement was false and misleading.

56. The announcement falsely states that students enrolled in the on-campus program for the spring 2020 quarter would be charged the normal Drexel University Online rate for that quarter as a result of the classes being moved online.

57. However, Defendant did not live up to this promise.

58. Instead, Defendant persisted in charging the full on-campus rate.

59. Indeed, there is a significant difference in the pricing structure between the two products.

60. The regular on-campus undergraduate tuition rate at Drexel University for full time students during the 2019-2020 academic year was $17,382, amounting to anywhere between $1,448.50 and $1,158.80 per credit hour depending upon the number of hours for which the student registers. The regular on-campus undergraduate tuition rate for part time students was $1,173 per credit hour.

61. Conversely, the Drexel University Online tuition rate is $530 per credit, representing a roughly 55% discount.

62. Likewise, on-campus undergraduate students were required to pay a per term University Fee of $790.

63. Upon information and belief, students in the Drexel University Online program are not charged a University Fee.

---

[15] https://drexel.edu/now/archive/2020/March/Campus-update-rich-offering-student-experiences/

64. Accordingly, when Defendant collected $18,172 in tuition and fees from Plaintiffs and members of the Class for the spring 2020 quarter, and refused to issue appropriate refunds, Defendant charged Plaintiffs and members of the class significantly more than the price advertised in the March 25, 2020 announcement.

65. The only other way to possibly interpret this March 25, 2020 statement, is to deduce that Drexel has always charged the same tuition and fees for in-person and online classes, giving the reader assurance that online and in-person learning is fully commensurate.

66. However, as demonstrated above, this too would be false and misleading.

67. There is no explicable reason why Defendant would have mentioned Drexel University Online in this announcement, specifically with respect to the section on tuition and fees, other than a clear intent to deceive.

68. The UTPCPL also makes it unlawful to pass off goods and services as those of another; to cause likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another; and to represent that goods or services are of a particular standard, quality or grade…if they are of another.

69. Defendant's March 17, 2020 statement that "Drexel University Online already provides high quality, impactful, and engaging remote education…now we're just taking it up a notch" coupled with the March 25, 2020 announcement highlighting Drexel's "long history in online education" and asserting "we have an experienced and resourceful community committed to delivering high-quality courses and exams with academic integrity and rigor" creates the misleading implication that on-campus students transitioning to online classes would receive the same quality of product as offered by Drexel University Online.

70. Essentially, Drexel promised that its in-person students would be enrolled in the Drexel University Online program.

71. This was false and misleading.

72. As an initial matter, Drexel's online program is administered through a completely different legal entity than Drexel University, that being Drexel University Online, LLC.

73. Moreover, the professors traditionally teaching online classes through Drexel University Online were recruited, hired, and trained for their specific knowledge and experience with remote education delivery and technology.

74. As it turns out, many of Defendant's on-campus professors were woefully technologically illiterate and ill-prepared to teach their materials in a remote fashion.

75. Likewise, most of these professors had never been evaluated, trained, or certified in the intricacies of teaching online.

76. Drexel University is accredited by the Middle States Commission on Higher Education, which is a member of the Council of Regional Accrediting Commissions.

77. As part of the accreditation process, each of Defendant's programs and courses was highly scrutinized for rigor and effectiveness.

78. While the Middle States Commission on Higher Education does not, upon information and belief, separately accredit online programs, such programs must be and are evaluated as part of an institution's overall accreditation process.

79. The Council of Regional Accrediting Commissions has established a separate appendix to its manual setting forth the interregional guidelines for the evaluation of distance education programs.[16]

80. As part of the evaluation and accreditation process, a school must show that its online

---

[16] file:///Users/empoulin/Downloads/SARA%20Manual.pdf

13

programs meet certain criteria.

81. Among other criteria, the schools must provide evidence that:

    i. Online learning faculties are carefully selected, appropriately trained, frequently evaluated, and are marked by an acceptable level of turnover;

    ii. The institution's training program for online learning faculty is periodic, incorporates tested good practices in online learning pedagogy, and ensures competency with the range of software products used by the institution;

    iii. Faculty are proficient and effectively supported in using the course management system; The office or persons responsible for online learning training programs are clearly identified and have the competencies to accomplish the tasks, including knowledge of the specialized resources and technical support available to support course development and delivery;

    iv. The institution provides an online learning orientation program; and

    v. Students using online learning demonstrate proficiency in the use of electronic forms of learning resources.

82. While Defendant's traditional online classes were evaluated and approved under these standards, it is clear that none of the classes hastily transitioned to online delivery were so evaluated and, indeed, most would not have been so approved.

83. On-campus students who were transitioned to online classes, taught by professors with no remote delivery experience, based on curricula that was not specifically designed to be delivered online, did not receive anywhere near the same educational product as those students traditionally attending Drexel University Online.

84. For Defendant to market the products as comparable, if not identical, was a misrepresentation of epic proportion.

85. Finally, the UTPCPL makes it unlawful to engage in any other deceptive conduct which creates a likelihood of confusion or misunderstanding.

86. Defendant's statement that "[b]efore the first day is out, professors and their students will have gathered online for more than 750 course sessions previously scheduled in traditional classrooms and labs. By week's end, they will be followed by several thousand online sessions, amounting to approximately 3,250 instructional meetings" was simply false.

87. The statement implies that each and every class "gathered" for a synchronous online session and would continue to "meet" for the duration of the term.

88. In fact, many courses never met or gathered at all.

89. For example, Plaintiff Rickenbaker's biology class did not conduct a single live lecture the entire semester.  Neither did his coop 101 class.  Instead, each and every "class" consisted of either a pre-recorded video lecture or, worse, a posted self-study homework assignment.  Other classes "met" only sporadically.

90. Likewise, beyond simply failing to meet and gather, three of Plaintiff Mekler's classes were cancelled altogether.

91. Plaintiffs and members of the Class purchased products and/or services from Defendant when they paid tuition, registered for, and ultimately attempted to attend spring 2020 classes.

92. However, the ultimate product/service they received was not as advertised.

93. Moreover, Plaintiff's and members of the Class were charged and paid significantly more than the advertised price.

94. As such, Plaintiffs and members of the Class suffered a substantial loss of money.

95. As a result of Defendant's deceptive and illegal actions, Plaintiffs and members of the Class are entitled to receive compensation for their damages, together with treble damages and reasonable attorney fees.

### FOR A SECOND COLLECTIVE CAUSE OF ACTION
### BREACH OF CONTRACT
### (Plaintiffs and Other Members of the Class)

96. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

97. Plaintiffs bring this count on behalf of themselves and other members of the Class.

98. Plaintiff Meckler and members of the Class who paid spring 2020 tuition prior to March 16, 2020 entered into contracts with Defendant which provided that Plaintiffs and other members of the Class would pay tuition for or on behalf of students and, in exchange, Defendant would provide live in-person instruction in a physical classroom.

99. Defendant materially altered the structure of the spring 2020 quarter on March 16, 2020, when Defendant announced that the quarter would take place entirely online.

100. Because of Defendant's refund policy, Plaintiff Mekler and members of the Class who paid spring 2020 tuition prior to March 16, 2020 were free to withdraw following this announcement and seek a full refund.

101. Likewise, Plaintiff Rickenbaker and members of the Class who had signed up for spring 2020 classes but not yet paid tuition were free to withdraw from those classes and were not obligated to make such tuition payment.

102. However, when Plaintiff Rickenbaker paid tuition on April 1, 2020, and Plaintiff Mekler and other members of the Class remained enrolled and/or paid tuition, there was created a new contract which provided that Plaintiffs and other members of the Class would pay tuition for or on behalf of students and, in exchange, Defendant would provide online remote instruction pursuant to the terms and policies set forth in Defendant's emails, together with those promises made by Defendant in its other publications, bulletins, and circulars, including specifically, its registration portal.

103. Based on this mutual assent, Plaintiffs and other members of the Class fulfilled their end of the bargain when they paid tuition for the Spring 2020 quarter, either by paying out-of-pocket or by using student loan financing, or otherwise.

104. However, Defendant breached the contracts with Plaintiffs and the Class.

105. Defendant promised to provide remote instruction that was commensurate with that instruction provided by Drexel University Online.

106. As set forth more fully above, Defendant failed to deliver on this promise.

107. Likewise, in their March 19, 2020 bulletin, Defendant specifically promised that professors would remain available for student access, and that each professor would post his or her office hours clearly on the course syllabus.

108. It is axiomatic that student/teacher communication is a hallmark essential to an effective education.

109. As such, this was a material promise, that Defendant breached.

110. Many professors failed to post office hours on their course syllabi and were otherwise unavailable or under available to students.

111. Defendant retained tuition monies paid by Plaintiffs and other members of the

Class, without providing them the full benefit of their bargain.

112. Plaintiffs and other members of the Class have suffered damage as a direct and proximate result of Defendant's breach.

113. As a direct and proximate result of Defendant's breach, Plaintiffs and the Class are legally and equitably entitled to damages, to be decided by the trier of fact in this action, to include disgorgement of the difference between the fair market value of the online learning provided versus the fair market value of the instruction for which they contracted.

### FOR A THIRD COLLECTIVE CAUSE OF ACTION
### UNJUST ENRICHMENT
### (Plaintiffs and Other Members of the Class)

114. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

115. Plaintiffs bring this count on behalf of themselves and other members of the Tuition Class.

116. This claim is pled in the alternative to, and to the extent it is determined a contract does not exist or otherwise apply to, the contract-based claim set forth in the Second Cause of Action above.

117. Plaintiffs and other members of the Class paid substantial tuition for classes taught by qualified instructors and for access to those instructors via virtual office hours.

118. Plaintiffs and other members of the Class conferred a benefit on Defendant when they paid this tuition.

119. Defendant has realized this benefit by accepting such payment.

120. However, Plaintiffs and members of the Class did not receive the full benefit of

their bargain.

121.    Defendant has retained this benefit, even though Defendant has failed to provide the services for which the tuition was collected, making Defendant's retention unjust under the circumstances.

122.    Equity and good conscience require that the University return a portion of the monies paid in tuition to Plaintiffs and other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of members of the Classes, pray for judgment in their favor and against Defendant as follows:

a.    Certifying the Classes as proposed herein, designating Plaintiffs as Class representatives, and appointing undersigned counsel as Class Counsel;

b.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this action;

c.    Declaring that Defendant has wrongfully kept monies paid for tuition and fees;

d.    Requiring that Defendant disgorge amounts wrongfully obtained for tuition and fees;

e.    Awarding injunctive relief as permitted by law or equity, including enjoining Defendant from retaining the pro-rated, unused monies paid for tuition and fees;

f.    Scheduling a trial by jury in this action;

g.    Awarding Plaintiffs' reasonable attorney's fees, costs and expenses, as permitted by law;

h.    Awarding treble damages;

i.    Awarding pre and post judgment interest on any amounts awarded, as permitted

by law; and

j.      Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demands trial by jury in this action of all issues so triable.

Dated June 22, 2020

**ANASTOPOULO LAW FIRM, LLC**

/s/ Eric M. Poulin
Eric M. Poulin
Fed ID No.: 11251
Roy T. Willey, IV
Fed ID No.: 11664
32 Ann Street
Charleston, SC 29403
(P): 843-614-8888
(F): 843-494-5536
    eric@akimlawfirm.com
    roy@akimlawfirm.com

**ATTORNEYS FOR PLAINTIFFS**